



RECEIVED
5/12/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**United States District Court Northern District of Illinois**

**COMPLAINT FOR A CIVIL CASE**

**Attachments**

1:25-cv-5261
**Judge Joan B. Gottschall**
**Magistrate Judge Maria Valdez**
**RANDOM / Cat. 2**

| | | |
|---|---|---|
| Tala Josephano | ) | Case Number : |
|   Plaintiff | ) | |
| | ) | Judge: |
| VS | ) | Magistrate Judge: |
| **Amani Alhindi** | ) | |
| Defendant | ) | |

## COMPLAINT

## INTRODUCTION

Defendant was unjustly enriched by retaining $9,100 in financial support provided by Plaintiff during a time of need. In addition, Defendant's breach of loyalty and concealment following Captain Mohannad's death caused Plaintiff to suffer over $250,000 in damages, including legal costs, investigative efforts, and emotional harm. In November 2023, a police report confirmed that medical negligence contributed to Captain Mohannad's death—facts Defendant actively concealed in order to collect life insurance and estate proceeds without interference or accountability. Plaintiff's claims are timely under the applicable statute of limitations. Under Illinois law, a claim for unjust enrichment must be brought within five years of the conduct giving rise to the claim. The financial assistance at issue includes payments made in April, and

May 2021. Plaintiff did not become aware of the alleged breach until December 2021. Because the action was filed within five years of both the payments and the discovery of the breach, the claim is well within the statutory period for unjust enrichment under Illinois law. These payments were made in direct reliance on Defendant's assurances that repayment would occur once financial stability was restored.

**Parties**

**Plaintiff:** Tala Josephano 615 S Catalina Ave #233 Redondo Beach, CA 90277

**Defendant:** Amani Alhindi 1904 Tamahawk Ln, Naperville, IL 60564-8936

**Jurisdiction**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 based on diversity of citizenship. Defendant, Amani Alhindi, is a citizen of the State of Illinois. Plaintiff, Tala Josephano, is a citizen of the State of California. The amount in controversy exceeds $75,000, exclusive of interest and costs, as required by statute

Personal Jurisdictions : This Court also has personal jurisdiction over Defendant, Amani Alhindi, because she is a resident of Illinois and all acts giving rise to this action occurred within the State of Illinois where Plaintiff resides and her bank account is located.

**Venue** is proper in the United States District Court for the Northern District of Illinois because Defendant is a resident of Naperville, Illinois, which is located within the Northern District of Illinois. The funds at issue were transferred to an account open and active in Illinois, and all actions giving rise to this claim-including Defendant's request for and receipt of the

funds-occurred while Defendant resided in Naperville, Illinois. Under 28 U.S. Code § 1391, venue is proper in a district where a defendant resides or where a substantial part of the events giving rise to the claim occurred.

**Statement of Facts**

1. **Unjust Enrichment December 2022**

2. Plaintiff Tala and Defendant Amani shared a relationship of significant trust and confidence that extended beyond family ties, as Defendant was married to Plaintiff's brother, Captain Mohannad Alhindi, until his death in December 2022. This relationship was marked by a high degree of reliance and mutual trust

3. During periods of financial and personal hardship, Defendant relied on Plaintiff for consistent support. Plaintiff provided substantial financial assistance, housing, and guidance, acting as a caretaker and advisor, with the clear expectation that such support would be reciprocated or repaid when circumstances allowed Defendant

4. Plaintiff also provided material support to Defendant's only son for two years, including housing and direct financial care during his recovery from addiction and probation. These actions were undertaken as part of the ongoing relationship of trust and with the knowledge that Plaintiff's money would not be retained by Defendant without return.

5. The parties maintained a close personal bond and Plaintiff regularly stayed with Defendant during visits to Chicago, sought her input on personal matters, and entrusted Defendant with the management of certain financial matters. This confidential relationship was further necessitated by the frequent and extended absences of Plaintiff's brother, Captain Mohannad Alhindi, who was often traveling and working in the Middle

East, leaving Defendant to manage household and financial affairs in his absence and in her full control.

6. During the COVID-19 pandemic in 2020, Defendant and her husband explicitly requested financial assistance for their house mortgage from Plaintiff due to acute financial hardship, and assured Plaintiff that any funds provided would be repaid once her husband returned to full-time work. Plaintiff's financial assistance was not a voluntary gift; it was provided based on Defendant's express assurances and the parties' relationship of trust and reliance.

7. Between January and May 2021, Plaintiff provided financial assistance to Defendant on multiple occasions, sending funds directly via Zelle to an account under the name "AMANI Alhindi." Defendant had access to and control over these funds. Each payment was made in reliance on Defendant's repeated assurances that repayment would follow once financial stability was restored. Plaintiff acted with kindness and didn't doubt that they will not repay her

8. At that time, Defendant and her husband faced significant financial hardship, including a remaining mortgage balance of approximately $40,000 on their Naperville, Illinois home. Captain Alhindi was stranded in the Middle East due to COVID-19 travel restrictions and unable to contribute financially. Defendant expressed urgency in needing funds to avoid penalties or possible foreclosure, and Plaintiff sent payments specifically to help cover the mortgage, insurance, and other critical expenses, conferring a direct financial benefit to Defendant at Plaintiff's expense

9. While some amounts were later repaid and others recovered through a small claims judgment, an outstanding balance of $9,100 remains, which Plaintiff now seeks to recover through this claim.

10. Throughout 2021 and into 2022, Plaintiff remained understanding of Defendant's financial situation, taking into account that Captain Mohannad had not yet returned to full-time work. In the summer of 2022, after Captain Mohannad resumed full employment and Defendant's financial condition improved.

11. In August 2022, Defendant and Captain Mohannad made a partial repayment for funds originally sent in January 2021 and assured Plaintiff that additional payments would follow.

12. Plaintiff learned in November 2022 that Defendant and Captain Mohannad had fully paid off the remaining balance on their Naperville mortgage. Plaintiff then requested that a formal payment arrangement begin so she could recover the remaining funds.

13. Defendant responded by promising that repayment would resume the following month. On December 14, 2022, Captain Mohannad passed away suddenly.

14. Defendant repeatedly acknowledged her obligation to restore Plaintiff's financial support, reinforcing Plaintiff's reasonable expectation that the benefits provided would be returned. Defendant's failure to fulfill these obligations constitutes a clear breach of the trust and loyalty owed to Plaintiff, resulting in direct and ongoing harm

15. **Captain Mohannad's death December 14 2022**

16. On the day of his passing, Plaintiff and Defendant supported each other emotionally and maintained open communication. Their relationship remained cooperative and grounded in trust.

17. After Captain Mohannad's death in two days, Defendant traveled to Jordan to arrange his burial—a country Plaintiff is unable to enter due to governmental restrictions. Contrary to prior expectations that he would be buried in Naperville, Defendant made the unilateral decision to bury him abroad.

18. Later to be revealed this decision was intended to prevent her from asking questions or learning details about what occurred at the hospital leading up to Captain Mohannad's death. Defendant also appeared intent on avoiding any contact with Captain Mohannad's employer. Moreover, Plaintiff's mother is a legal heir and part of the estate, and Defendant's actions suggest an effort to ensure there would be no interference by Plaintiff or her mother that could complicate Defendant's collection of the inheritance

19. After the death of Captain Mohannad, Defendant's financial position improved substantially-she became the sole owner of her home and inherited approximately $800,000, placing her in a position of significant financial security. Despite this, Plaintiff remained uncompensated for the substantial support and financial benefits previously provided to Defendant.

20. Although Defendant now had the clear financial ability to restore the benefits conferred by Plaintiff, she unjustly retained those funds without repayment, acknowledgment, or justification. This conduct disregarded the trust-based relationship and the fiduciary obligations arising from Plaintiff's consistent support during Defendant's period of hardship

21. Rather than honoring her obligations or offering restitution, Defendant severed all communication with Plaintiff, despite full awareness that Plaintiff had provided essential support and relied on Defendant's assurances of repayment. This abrupt termination of

contact further violated the duties of loyalty, transparency, and good faith that are central to fiduciary and trust relationships.

22. Defendant's breach extended beyond financial matters. She had previously assured Plaintiff and others that she would seek accountability regarding the circumstances of Captain Mohannad's death. However, to avoid interruption in receiving compensation from her husband's employer, Defendant failed to take any meaningful steps to investigate or pursue the matter, despite explicitly stating she would "look into" potential negligence by the Captain's employer and the hospital. This failure to act, and obstructing Plaintiff from acting especially after repeated assurances, further demonstrates Defendant's disregard for her duties of loyalty and trust

23. As a result of Defendant's acts, Plaintiff not only suffered financial harm but was also left alone in her efforts to seek justice and accountability for her brother's death, compounding the breach of trust and deepening the personal and emotional injury.

24. Defendant's inheritance in 2023 did not extinguish her ongoing obligation to restore the financial benefits unjustly retained from Plaintiff. Rather, the receipt of substantial funds further removed any justification for Defendant's continued retention of benefits conferred by Plaintiff in reliance on their relationship of trust.

25. Plaintiff reasonably relied on both the longstanding confidential relationship and Defendant's explicit assurances that the financial support provided would be repaid. Defendant's failure to return these funds, particularly after her financial circumstances improved, constitutes a clear instance of unjust enrichment.

26. Despite now having the means to make restitution, Defendant severed communication with Plaintiff and continued to retain the financial benefits provided. This conduct, in

light of the parties' confidential relationship and Plaintiff's reliance, constitutes

inequitable retention of benefits and supports Plaintiff's claim for unjust enrichment.

27. **Continuous harm**

28. As of May 2025, Defendant continues to unjustly retain financial benefits conferred by

Plaintiff, leaving Plaintiff uncompensated for the substantial support she provided.

Defendant directly benefited from Plaintiff's financial assistance, which enabled

Defendant to maintain ownership of her home and improve her financial situation.

Despite later acquiring significant financial resources, Defendant has refused to return

any of the benefits received from Plaintiff

29. Defendant has no equitable or legal justification for retaining these benefits. She has

actively avoided acknowledging Plaintiff's financial assistance, despite having directly

benefited from it. Although Plaintiff provided this support with the reasonable

expectation of restitution, Defendant has repeatedly refused to restore the benefits

unjustly retained, even after multiple opportunities to do so

30. This ongoing refusal constitutes a continuous and current unjust enrichment, as

Defendant's retention of these benefits remains without legal or equitable basis, and

Plaintiff continues to suffer uncompensated loss as a result

31. **Dupage County Small Claim**

32. On April 6, 2023, Plaintiff filed a small claims case in DuPage County (Case No.

2023SC001636) to recover a limited portion of the financial assistance

provided-specifically, payments made in February and March 2022. That action did not

seek recovery for, nor did the court address, separate transactions occurring in April and

May 2021.

33. The small claims action was limited to $4,500 for February 2022 and $3,000 for certain payments in March 2022, consistent with the $10,000 jurisdictional cap for small claims court in Illinois. The amounts now sought in this case pertain exclusively to separate payments made in April and May 2021, which were not included in the prior case and have never been adjudicated.

34. Because the two sets of claims involve different transactions from different time periods, they are legally distinct. The 2023 small claims case addressed only payments transferred in February–March 2022, while the present action seeks recovery for April–May 2021 transactions and related financial losses resulting from Defendant's breach of trust and loyalty.

35. The limited scope of the small claims case, dictated by the statutory $10,000 cap, prevented Plaintiff from including all amounts owed in a single action. As such, the judgment from the small claims case does not preclude Plaintiff from pursuing this current action, which is based on separate, unadjudicated payments made in reliance on a trust-based relationship.

36. The prior judgment was narrow in scope and did not address subsequent or different payments made outside the period covered by that case. Plaintiff made multiple, distinct financial contributions over time in good faith, based on Defendant's stated financial difficulties.

37. Despite the court's ruling in the small claims case, Defendant has not satisfied that judgment, nor has she addressed the additional unpaid financial benefits arising from the separate financial assistance provided by Plaintiff.

38. Defendant engaged in procedural tactics to delay enforcement, including evading service, failing to file a formal defense, and forcing Plaintiff to travel from California to Illinois, incurring additional legal and travel expenses.

39. **Damages to Plaintiff**

40. Before the death of the Captain, Defendant cited financial hardship as a reason for not returning any portion of the financial assistance provided by Plaintiff. However, after inheriting around $800,000, Defendant's financial position drastically improved.

41. Defendant is benefiting from Plaintiff's financial assistance without justification, especially when she later gains the means to restore the benefit but deliberately refuses to do so. Defendant has retained the financial benefits while Plaintiff remained uncompensated.

42. Defendant actively avoided acknowledging Plaintiff's financial assistance and, despite multiple opportunities to restore any portion of the benefits unjustly retained, has refused to do so.

43. Defendant has no valid legal defense for unjustly retaining the financial benefits Plaintiff provided. If the Court does not grant restitution, Plaintiff will continue to suffer unjust financial harm, while Defendant continues to benefit unfairly.

44. Defendant's knowing and deliberate retention of Plaintiff's financial assistance resulted in an inequitable financial gain at Plaintiff's expense. Defendant's actions were intentional and in bad faith, as she knowingly retained financial benefits without justification.

45. This case is not about imposing a repayment obligation due to inheritance. It is about ensuring that Defendant does not unjustly retain financial benefits obtained at Plaintiff's expense when she now has the means to make restitution.

46.  Defendant is retaining these funds unjustly and still refuses to return them despite acquiring substantial financial resources, making this a continuing unjust enrichment that remains actionable within the permissible timeframe

47. The inheritance created a new obligation to restore fairness, triggering a fresh claim of unjust enrichment that was not and could not have been addressed in the small claims case

48. Defendant cut communication, preventing Plaintiff from knowing the circumstances of her brother's death and severing her relationship with her nephew an attempt to avoid restitution

49. **July 2023**

50. To this day, Plaintiff continues to pursue justice for her brother—researching, seeking information, and making every effort to uncover the truth behind the circumstances of his death. Defendant, by contrast, has taken no steps to investigate, disclose, or remedy the unresolved questions surrounding his passing.

51. In November 2023 the Police Report from the death was issued and negligence in Captain's death and the was established confirming liability on Defendant, the employer and the hospital. Which revealed the financial gains behind Defendant cutting off communication with Plaintiff and the rush to bury the Captain and obstructing Justice.

52. While Plaintiff bears the emotional and financial burden of seeking accountability, Defendant has secured financial gain from Captain Mohannad's death, including

inheritance proceeds and estate benefits, all while refusing to acknowledge the trust she betrayed or restore what was provided to her in good faith.

53. Defendant's continued silence and refusal to engage only deepens the harm caused by her breach of trust. Her actions constitute not only a personal betrayal but also an ongoing unjust enrichment at Plaintiff's expense.

54. **Plaintiff's Financials**

55. Defendant was fully aware of Plaintiff's business operations and financial model, as she previously performed administrative and accounting work for Plaintiff. Defendant knew that Plaintiff's business relied on continuous cash flow rather than reserved capital and that any financial assistance extended to Defendant directly impacted Plaintiff's ability to reinvest in her business. Plaintiff's business operates on an investment-to-profit model, where every $10,000 reinvested generates between $20,000 and $30,000 in profit.

56. By unjustly retaining the funds, and causing quantifiable financial damages for Plaintiff in pursuing legal actions, Defendant directly prevented Plaintiff from reinvesting into her business, resulting in measurable financial losses. The claim for lost profits is directly tied to Defendant's retention of capital that was critical to business operations.

57. Defendant's actions not only resulted in the loss of the initial financial assistance provided but also caused substantial economic harm in the form of lost business profits. As a direct result of Defendant's breach of trust, Plaintiff suffered financial losses exceeding $1,500,000 in lost profits and other financial burdens incurred in seeking to recover the funds Defendant unjustly retained.

58. Plaintiff's business model required capital reinvestment, and without the expected funds and funds spent on the death of the Captain, alternative sources of income were sought

but did not replace the lost opportunities. Defendant's deliberate evasion and retention of funds made it impossible for Plaintiff to recover timely, directly leading to financial harm.

59. Furthermore, Defendant waited until after inheriting $800,000 to sever communication, reinforcing that she was avoiding repayment, not denying its obligation.

60. Defendant's deliberate failure to repay Plaintiff, despite having the financial means to do so, and her active efforts to mislead and evade accountability, constitute willful and wanton misconduct. Such conduct demonstrates a conscious disregard for Plaintiff's rights and for the principles of fairness and equity underlying the parties' trust-based relationship. As a result, Plaintiff respectfully requests that the Court consider an award of punitive damages to deter similar misconduct and to punish Defendant's intentional and egregious breach of duty.

61. **Gaslighting, Misrepresentation, Abuse of Process, and Defamation**

62. Defendant has engaged in a pattern of fabricating events and attributing actions to Plaintiff that never occurred.

63. After more than two years of ignoring and failing to participate in Small Claims Case No. 2023SC001636, Defendant Amani filed two motions to vacate the default judgment—on March 18, 2025, and March 20, 2025. In both filings, Defendant included conflicting and misleading statements under penalty of perjury regarding her legal representation.

64. On March 18, 2025, Defendant Amani Adnan Alhindi filed a motion to vacate the default judgment in this case. In that March 18 motion, Defendant stated that she had hired attorney Al-Haroon B. Husain of Himont Law Group Ltd. to represent her in this matter.

65. Defendant further claimed in that motion that her attorney had failed to file an appearance, had failed to file any motions, had refused to return her phone calls, and that he was "previously suspended from the bar for making false statements to a court."

66. Two days later, on March 20, 2025, Defendant Amani filed another motion to vacate judgment. In the March 20 filing, Defendant repeated the same story about having hired Attorney Husain and blaming him for her failure to appear or participate in the case.

67. However, in the March 20 motion, Defendant omitted the prior accusation that her attorney had been suspended or disciplined for misconduct.

68. Both motions were signed and submitted under penalty of perjury, as required by 735 ILCS 5/1-109.

69. These two motions contain a material contradiction about the attorney's character and status and reasons for failing to defend Tala's claim—raising serious questions about whether Defendant made a knowingly false statement in her March 18 motion, or whether she deliberately omitted a critical fact from her March 20 filing to avoid scrutiny.

70. Defendant Amani's inconsistent sworn statements further demonstrate a pattern of dishonesty, bad faith, and manipulation of the judicial process.

71. Defendant claimed in her motions that Plaintiff had filed multiple lawsuits against her in both Jordan and the United States, including "at least 8 frivolous lawsuits." This representation mischaracterizes Plaintiff's legal activity. Plaintiff Tala has not been to Jordan since 2011 and, due to her political views, is not legally permitted to enter the country, retain legal counsel, or initiate any legal proceedings there.

72. Regarding the referenced Case No. 2024SC006814, Plaintiff filed that case **pro se** in good faith, seeking compensation for damages she believed were related to her

participation in earlier litigation. Upon reflection, Plaintiff voluntarily dismissed the matter, recognizing that the nature and extent of those damages were not appropriate for small claims court. Furthermore, the claim was never served on Defendant Amani.

73. Defendant's motion also referenced Case No. 1:24−cv−13183 as further evidence of harassment. However, Plaintiff Tala is not a party to that case and has no involvement in it.

74. These representations—combined with the omission of clarifying facts—created a misleading narrative in which Plaintiff was portrayed as abusive, retaliatory, and litigious. Though styled as factual assertions, these statements lack essential context and were submitted to the Court under oath, without disclosing their inaccuracy or irrelevance to Plaintiff.

75. The defamatory statements made by Defendant—namely, that Plaintiff filed "at least 8 frivolous lawsuits," that Plaintiff was engaging in legal harassment, and that she was a vexatious litigant—were not pertinent to any defense or issue properly before the Court in this action. These statements were unrelated to the financial dispute between the parties and served no legitimate litigation purpose. Instead, they were included solely to attack Plaintiff's character and credibility, rendering them outside the scope of any qualified or absolute privilege under Illinois law.

76. The effect of these misrepresentations has been to distort the Court's understanding of Plaintiff's actions and reputation. The information was submitted through official pleadings, accessible in the public record, and thus meets the threshold of publication for purposes of reputational harm.

77. Plaintiff Tala respectfully requests that the Court take these omissions and mischaracterizations into account when evaluating Defendant's credibility, and grant any relief deemed appropriate based on the record before the Court.

78. **Furthermore,** Defendant Amani engaged in a sustained pattern of conduct designed to isolate and emotionally injure Plaintiff Tala following the death of her brother.

79. After accepting substantial financial assistance from Plaintiff, Defendant cut off communication and obstructed Plaintiff from attending or participating in her brother's funeral, from obtaining information regarding the circumstances of his death, and from achieving any emotional closure.

80. Defendant obstructed and prevented any investigation into the circumstances surrounding the decedent's death and used her control of information and access to shield herself from restitution, while benefiting from Plaintiff's financial support.

81. Defendant's conduct was intentional and carried out with reckless disregard for the emotional distress it would cause Plaintiff, who was grieving the loss of her brother and deeply affected by her sudden exclusion from his burial and seeking justice.

82. These coordinated acts, particularly during a period of profound grief and financial vulnerability, were so extreme, dehumanizing, and degrading as to exceed all bounds of decency tolerated in a civilized community.

83. As a direct result of Defendant's conduct, Plaintiff Tala Elhendy has suffered severe and continuing emotional and physical distress. This includes profound grief, anxiety, humiliation, and an enduring sense of betrayal. Being blocked from her brother's funeral, denied the chance to see him one final time, and cut off from closure surrounding his death inflicted deep emotional trauma. The ongoing emotional harm has also manifested

in **physical symptoms**, including pain, irregularity in blood pressure, sleep disruption, and health complications requiring clinical attention. The impact of Defendant's actions has caused Plaintiff lasting damage to her mental, emotional, and physical well-being.

84. The harm suffered by Plaintiff is not limited to the period between January and May 2021 when the original financial transfers were made. Rather, the injury is ongoing and renewed daily, as Defendant continues to withhold restitution.

85. Defendant's ongoing refusal to restore the benefit conferred—despite having both the means and multiple opportunities to do so—constitutes a continuing violation of Plaintiff's rights and an act of conscious disregard toward Plaintiff's suffering.

86. This continuing harm is not merely passive; it is compounded by Defendant's conduct in this litigation, including the submission of misleading statements to the Court, omissions of material facts, and the repeated portrayal of Plaintiff as vindictive or harassing.

87. Defendant's pattern of behavior in court reinforces and extends the emotional distress already inflicted, as it deprives Plaintiff not only of restitution but also of dignity, credibility, and closure.

88. Each day that Defendant withholds repayment and continues to misrepresent Plaintiff's actions—both inside and outside the courtroom—constitutes a new instance of injury, thereby rendering Plaintiff's claims timely and actionable under continuing harm principles.

**FIRST CAUSE OF ACTION**

**Breach of Fiduciary Duty**

Plaintiff and Defendant, Amani Alhindi, stood in a fiduciary relationship arising from their long-standing familial bond, mutual reliance, and a history of Plaintiff providing financial and personal support, particularly during periods of hardship such as the Covid-19 pandemic. Defendant accepted this trust and exercised control over matters of joint financial and personal significance

From December 2022 through the present, Defendant knowingly and intentionally breached her fiduciary duties to Plaintiff by Concealing records and communications related to the deceased's care and death; Refusing to take legal action against the employer and hospital despite evidence of negligence; Failing to notify or include Plaintiff in matters relating to the deceased's passing and the handling of his affairs, despite Plaintiff's legitimate interests; Misusing her authority as estate representative to secure inheritance and insurance proceeds for her exclusive benefit while excluding and misleading Plaintiff; Retaining $9,100 and other financial resources entrusted to her by Plaintiff, refusing to return or account for them despite having the means to do so after receipt of insurance/inheritance distributions

Defendant's conduct constitutes acts of concealment, self-dealing, and bad faith, in violation of her fiduciary duties of care, loyalty, honesty, and full disclosure imposed by law. As a direct and proximate result of Defendant's breach, Plaintiff has suffered actual financial harm and seek remedy

**SECOND CAUSE OF ACTION**

**Unjust Enrichment**

Plaintiff conferred substantial financial benefits upon Defendant, in direct financial assistance provided during periods of Defendant's hardship( $9100), as well as additional sums expended by Plaintiff since December 2022 in reliance on the parties' relationship of trust and Defendant's assurances of fair dealing.

Defendant knowingly accepted and retained these benefits, which were provided by Plaintiff in good faith and with the reasonable expectation of repayment or restitution. These funds were not gifts, but were extended with the understanding that Defendant would return or account for them, particularly after Defendant's financial circumstances improved following. Defendant's continued retention of these funds, including the original $9100 and additional amounts Plaintiff was compelled to spend or lose as a result of Defendant's betrayal of trust and exclusion of Plaintiff from matters relating to the death of Captain Mohannad Alhindi, is unjust and inequitable. Defendant's enrichment has come directly at Plaintiff's expense and in violation of the fundamental principles of justice, equity, and good conscience .There exists no legal or equitable justification for Defendant's failure to return or account for the financial benefits conferred by Plaintiff. As a direct and proximate result of Defendant's unjust retention of these benefits, Plaintiff has suffered ongoing and quantifiable financial loss, including but not limited to the $9,100 originally provided and additional amounts expended or lost since December 2022 due to Defendant's conduct.  Plaintiff pleads this claim in the alternative to contract-based claims, as no written agreement exists and equity demands restitution of funds retained without justification."

**THIRD CAUSE OF ACTION:**

**Defamation (Per Se – Misrepresentation and Omission)**

Defendant, in sworn court filings that are publicly accessible, falsely stated and implied that Plaintiff engaged in legal harassment and vexatious litigation, referencing unrelated legal matters without factual basis. These statements were published to the Court and became part of the public record, accessible to the public and legal community.

Defendant knew these statements were false or acted with reckless disregard for their truth, as the referenced litigation was unrelated and Plaintiff's actions were lawful. By accusing Plaintiff of abusing the judicial system, Defendant directly impugned Plaintiff's integrity, fitness, and reputation in legal matters.

Defendant further omitted material facts necessary to clarify Plaintiff's actual legal status, creating a misleading and defamatory impression. While certain privileges may apply to court filings, such privilege does not protect knowingly false statements made with actual malice or statements irrelevant to the litigation.

Defendant's statements exceeded the scope of any litigation privilege, as they were irrelevant to the issues before the Court and made with knowledge of their falsity or reckless disregard for the truth. These statements are defamatory per se under Illinois law, and harm to Plaintiff's reputation is presumed. As a result, Plaintiff has suffered reputational damage, emotional distress, and harm to her standing before the Court and the public.

**FOURTH CAUSE OF ACTION:**

**Intentional Infliction of Emotional Distress (IIED)**

Defendant, Amani Alhindi, engaged in extreme and outrageous conduct by intentionally withholding substantial financial assistance previously provided by Plaintiff, despite having the clear ability to return it after receiving a significant inheritance.

Defendant compounded this conduct by abruptly severing all communication with Plaintiff immediately following the death of Plaintiff's brother, depriving Plaintiff of any opportunity for closure, grieving, or resolution.

Defendant further intensified Plaintiff's emotional distress by submitting court filings that falsely portrayed Plaintiff as abusive and harassing, with the intent to shame, discredit, and emotionally destabilize her.

Defendant's actions were intentional and malicious, or at minimum, undertaken with reckless disregard for the probability that they would cause Plaintiff severe emotional distress. Defendant knew, or should have known, that her conduct would inflict significant emotional harm, especially given the timing and circumstances.

As a direct and proximate result of Defendant's extreme and outrageous conduct, Plaintiff suffered and continues to suffer severe emotional distress, including anxiety, humiliation, psychological pain, and mental anguish. The distress experienced is so severe that no reasonable person could be expected to endure it

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and award the following relief:

1. Restitution in the amount of $9,100, representing financial assistance unjustly retained by Defendant, despite repeated assurances of repayment and the clear financial ability to return the funds;

2. Compensatory damages in an amount to be proven at trial, but not less than $280,000, for losses incurred as a direct result of Defendant's obstruction of Plaintiff's efforts to seek justice in the death of Captain Mohannad Alhindi, including lost inheritance rights, investigative costs, and legal harm;

3. Consequential business damages in the amount of no less than $1,000,000, resulting from the loss of investment capital and business opportunities caused by Defendant's prolonged retention of Plaintiff's funds and obstruction of justice and proven at court.

4. Prejudgment interest on the $9,100, calculated at the statutory rate of 9% per annum from December 2022 through the date of judgment

5. Punitive damages in the amount no less than $250,000, or such other amount as this jury deems just and appropriate, to punish Defendant's willful, malicious, and deceptive conduct and deter similar misconduct in the future;

6. General and emotional damages for severe emotional distress, anxiety, humiliation, and reputational harm suffered by Plaintiff as a result of Defendant's intentional infliction of emotional distress and defamatory conduct;

7. Costs and fees incurred in connection with this action, including post-judgment interest, enforcement costs, and reasonable attorneys' fees, as permitted by law or equity;

8.  Leave to amend this Complaint as justice may require;

9.  Such other and further relief as the Court deems just and proper.

Date : May 11 2025

Submitted by  PRO SE Plaintiff



Tala Josephano

615 S Catalina Ave #233

Redondo Beach, CA 90275

347-749-4980

talalegal25@gmail.com